**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**1:10cv096**

**SAMANTHA FORREST,** )
)
**Claimant-Appellant** )
)
**vs.** ) **CORRECTED ORDER**
)
**SPICEWOOD DEVELOPMENT, LLC,** )
)
**Debtor-Appellee.** )
________________________________)

**THIS MATTER** is before the Court on the appeal of claimant Samantha Forrest (Forrest) from the Order of the Bankruptcy Court [Bcy. Doc. 87] sustaining, in part, the Debtor's objection to her claim.

Forrest and James C. Hitt (Hitt) were principals[1] in Villas at Cedar Hill, LLC (Villas). Villas borrowed the original amount of $1,650,000.00 from Blue Ridge Savings Bank (the Bank), and executed a promissory note in that amount (the Note) to the Bank. Forrest and Hitt executed unconditional guarantees of the obligations of Villas to the Bank. In addition, the Note was secured by deeds of trust on property that Villas was planning to develop, and other property that was pledged by Spicewood Development, LLC, the Debtor

---

[1] A third principal has been discharged in bankruptcy and is not involved in this appeal.

herein (Spicewood). Spicewood at all times relevant herein has been wholly owned by Hitt. Spicewood did not, however, execute any written guaranty of the obligations of Villas to the Bank, nor did it sign the Note. Forrest pledged as additional collateral for the Note a certificate of deposit[2] in the original face amount of $150,000.00 (the CD).

When Villas' development ran into financial difficulty, the Bank liquidated Forrest's CD and applied it to the outstanding balance on the Note. The full amount of the CD plus accrued interest thereon at that time was $161,929.15. The Bank then commenced foreclosure proceedings against the Villas property. Before the foreclosure could be completed, Forrest purchased the Note from the Bank and took a complete assignment thereof. Forrest then completed the foreclosure. At the time of the purchase of the Note the balance owing thereon was $618,319.55 (consisting of $609,712.70 of principal and interest plus $8,606.85 attorneys fees). This was the net after allowing full credit for the $161,929.15 previously paid to the Bank by the liquidation of the CD. After the completion of the foreclosure sales of Villas' properties the remaining portion of that balance on the Note was $85,677.98.

[2] Forrest was originally required to deposit the $150,000.00 in a money market account with the Bank, but this was later converted to a certificate of deposit which was then offered as substitute collateral.

Spicewood sought bankruptcy protection to avoid foreclosure on its deed of trust. Forrest filed a claim in Spciewood's bankruptcy in the amount of $299,875.66, asserting the claim to be fully secured by the deed of trust. [Bcy. Doc. 53-1]. Spicewood objected to this claim. [Bcy. Doc. 57]. As of the time of the hearing on the objection, with accrued interest, the claim had grown to $347,129.43, which consisted of the following elements: (a) the balance on the Note of $85,677.98, (b) the loss resulting from the liquidation of the CD in the amount of $161,929.15 plus accrued interest thereon of $52,456.88 (for a total of $214,386.03 regarding this portion of the claim), and (c) attorneys fees in the amount of $47,065.42, consisting of $31,182.25 incurred prior to Forrest's acquisition of the Note and $15,883.17 in pursuing the foreclosure thereon. [Bcy. Doc. 87 at 4, 9-10].[3]

The Bankruptcy Court sustained the objection to the portion of Forrest's claim seeking to recover for the liquidation of the CD and the accrued interest thereon, as well as the attorneys fees incurred prior to Forrest's acquisition of

[3] Forrest argues in her brief [Doc. 2 at 9] that she should also be able to recover as a secured claim the amount she lost related to a different facet of this transaction. Forrest transferred a parcel of property to Villas and took back a purchase money deed of trust. When the Bank required a first position as to that additional property, Forrest subordinated her deed of trust. When that property was sold to satisfy the debt on the Note, Forrest lost her claim for the purchase price and the collateral therefor. That subordination loss, however, was never part of the claim Forrest made in the bankruptcy, was thus not a subject of Spicewood's objection, and was not ruled upon by the Bankruptcy Court. Any issue related to the subordination loss is, therefore, not before this Court.

the Note. The Bankruptcy Court also determined that the claim for the balance on the Note was not a subject of the Debtor's objection and thus allowed that portion of the claim, and allowed the attorneys fees incurred in the pursuit of the foreclosure. Forrest's claim was, therefore, allowed in the amount of $101,561.15 ($85,677.98 plus $15,883.17). [Bcy. Doc. 87 at 11].

At issue in this appeal is whether Forrest has an allowable claim for the loss of the CD and whether that claim is secured by Spicewood's deed of trust. In sustaining the objection to the claim regarding the CD, the Bankruptcy Court held that "Spicewood is not Forrest's 'principal' on the debt -- her principal is Villas. Forrest paid the debt owed to the Bank by Villas. Spicewood did not sign that Note, and thus had no obligation on it. Rather than being a 'principal,' Spicewood is simply a stranger to that obligation." [Bcy. Doc. 87 at 7] (emphasis in original). From that determination Forrest appeals to this Court. Spicewood does not contest the $101,561.15 secured claim found in favor of Forrest, and no issue is raised on appeal regarding the denial of the claim for the pre-acquisition attorneys fees.

In coming to its conclusion regarding the CD claim, the Bankruptcy Court appears to have analyzed these facts according to the following steps: (1) Forrest is entitled to reimbursement for her loss regarding the CD; (2) such obligation to reimburse Forrest is a debt of Villas' on the Note; (3) since

Spicewood is a “stranger to the Note” it is not obligated to Forrest for such reimbursement; and (4) thus Spicewood’s deed of trust does not stand as collateral for that obligation. Each of these points will be examined separately.

First, it is undisputed that Forrest is a surety as a result of her having executed her guaranty. N.C. Gen. Stat. §26-3.1(a). Thus, Forrest is entitled to reimbursement by Villas for the loss regarding the CD. Spicewood presents no contra argument.

Therefore, the Court begins its analysis with a determination as to whether the obligation of the Principal (Villas) to Forrest is an obligation *on the instrument*. In other words, does the obligation of the Principal to reimburse the surety arise from the instrument or from some separate legal duty? Former N.C. Gen. Stat. §25-3-415(5) answered that question clearly. It read: “If [a surety] pays the instrument [he] has the right of recourse *on the instrument* against such [accommodated] party.” (emphasis added). The suretyship portions of Article 3 of the Uniform Commercial Code, however, have been rewritten, and the revisions were adopted in North Carolina in 1995. The current language is not quite so clear on this point as was the former language. The provision now simply reads “An accommodation party who pays the instrument is entitled to reimbursement from the accommodated

party *and* is entitled to *enforce the instrument* against the accommodated party." N.C. Gen. Stat. §25-3-419(e) (emphasis added). While it is clear under the current statute that the obligation on the instrument remains, it is not immediately clear that the principal's obligation on the instrument includes its obligation to the surety for reimbursement, or whether that reimbursement duty arises from some other source. The official comments to §419 provide a bit of guidance. When the revisions to the suretyship provisions of Article 3 were adopted by the National Conference of Commissioners on Uniform State Laws, its Permanent Editorial Board (PEB) adopted a comment to §419(e) that read "Subsection (e) restates subsection (5) of present [prior] Section 3-415." If §419(e) is merely a restatement of old §415(5), then the clear meaning of old §415(5) can be imported into new §419(e), and the obligation to reimburse the surety continues to arise on the instrument. The PEB, however, modified this comment in 1994, prior to the adoption of these amendments by the North Carolina General Assembly. The sentence cited above was replaced with one which reads "Subsection (e), like former Section 3-415(5), provides that an accommodation party that pays the instrument is entitled to enforce the instrument against the accommodated party." That language begs the question at hand. The PEB, however, at the same time also adopted a new Comment 7 to §419 that reads in part "except to the

extent that it is displaced by provisions of this Article, the general law of suretyship also applies to the rights of accommodation parties," citing §1-103 (N.C. Gen. Stat. §25-1-103).

The law prior to the adoption of the UCC was that the right of reimbursement was a right on the instrument. The adoption of old §3-415(5) was

> indicative of an intent to give a statutory right to *what formerly had been a right* by implication of law. 'If the surety pays, accordingly, he may have reimbursement which, under the Code, is *a right of recourse on the instrument itself*.'

Ilg v. Andrews, 10 Wash. App. 936, 940, 520 P.2d 1385, 1388 (1974)[4] (emphasis added) (quoting R. Cosway, Negotiable Instruments - A Comparison of Washington Law and the Uniform Commercial Code, 43 Wash. L. Rev. 499 at 533 (1967)). The Court, therefore, concludes as a matter of law that the surety's right of reimbursement is a right *on the instrument*. For that reason Villas is obligated to Forrest on the Note itself for reimbursement for the CD and the subordination loss, as well as for the note balance. This portion of the Bankruptcy Court's analysis was correct in all respects.

---

[4] Due to a typographical error in the West reporter, 520 P.2d 1385, this case erroneously makes this statement about §3-405(5) of the UCC. The official state reporter, 10 Wash. App. 936, however, accurately reflects that §3-415(5) is the statute that codified the prior law with regard to the right of reimbursement.

The Court must next address the question of whether this obligation of reimbursement is secured by Spicewood's deed of trust. The Bankruptcy Court reasoned that since the obligation for reimbursement was an obligation on the Note, that only one who executed the Note would be liable for such reimbursement, and since Spicewood had not executed the Note it was not so liable. This reasoning, however, ignores the language used in Spicewood's deed of trust itself.

The deed of trust defines default to include any event wherein "Grantor fails to pay any payment when *due under the indebtedness*." [P Ex 3 at 6] (emphasis added). Indebtedness is defined as "all principal, interest, *and other amounts*, costs and expenses payable *under the Note*." [Id at 10] (emphasis added). Therefore, the failure of Villas to pay the reimbursement to Forrest under the Note constitutes a default under the terms of the deed of trust. The deed of trust goes on to say that "Trustee shall be authorized to hold a sale pursuant to North Carolina General Statute Chapter 45 . . . until the entire Property is sold or the *indebtedness is paid in full*." [Id. at 7]. The explicit language of the deed of trust therefore dictates that it stands as security for all of Villas' indebtedness on the Note, including Villas' obligation for reimbursement to Forrest as surety. Therefore, the Bankruptcy Court's

conclusion to the contrary based simply on Spicewood being a "stranger to the Note" is in error.

Even though this would seem to end the matter, it does not. One co-surety may seek only contribution from another co-surety, not reimbursement or indemnity. American Nat'l Fire Ins. Co. v. Gibbs, 260 N.C. 681, 133 S.E.2d 669 (1963); Bunker v. Llewellyn, 221 N.C. 1, 18 S.E.2d 717 (1942); Peebles v. Gay, 115 N.C. 38, 20 S.E. 173 (1894); Liles v. Rogers, 113 N.C.197, 18 S.E. 104 (1893). Therefore, if Forrest and Spicewood are co-sureties, Forrest's rights to foreclosure on the deed of trust may be limited.

It must, therefore, be determined whether Spicewood and Forrest are co-sureties. As stated *supra*, there is no question that Forrest is a surety for Villas. By pledging the collateral in the deed of trust, Spicewood is also a surety. One who merely pledges collateral for a debt but does not otherwise agree to stand for that debt is a surety. This is demonstrated in Hinton v. Greenleaf, 113 N.C. 6, 18 S.E. 56 (1893). In Hinton, a wife who was not obligated on her husband's note pledged her separate property to secure the note. She was held to be a surety. See also Suburban Nursing and Mobile Homes, Inc. v. Elliott, 498 So.2d 485 (Fla. 1986); Boyd v. Robinson, 7 Ohio Cir. Dec. 83, 13 Ohio C.C. 211 (1896). Hence, Forrest and Spicewood are both sureties for Villas.

Even though they are both sureties for Villas, the question remains as to whether they are co-sureties. In response to this, Spicewood makes a somewhat contorted argument that it is a surety to *Villas*, but not to *Forrest*. [Doc. 6 at 13]. Of course, Forrest did not agree to stand for any debt of Spicewood, or vice versa. The question here, however, is whether one surety to Villas is liable to reimburse another surety to Villas. The Court interprets Spicewood's argument to mean that even though Forrest and Spicewood are both sureties that they are not equal in the nature of their obligations. In this Spicewood is correct. The issue, however, is what effect, if any, this has on the relative rights of these parties.

Even though co-sureties may seek only contribution, if the obligations of two sureties are different in nature, then they are not co-sureties and they are not limited to contribution as between them. Hofler v. Hill, 311 N.C. 325, 316 S.E.2d 670 (1984). In Hofler, two parties (Hill and Suttles) guaranteed the principal's debt and provided deeds of trust to secure the debt, while a third (Allentown) executed a repurchase agreement promising in the event of default to buy the collateral from the lender for the full amount of the remaining debt. After the principal's default Allentown was called upon to pay off the debt by repurchase of the property, and then sought to recover its payment by foreclosing on Hill's and Suttles's deeds of trust. Hill and Suttles

defended on the basis that they were all sureties and therefore Allentown was only entitled to contribution, not reimbursement. The Supreme Court of North Carolina held that Allentown was entitled to full reimbursement. Since the *nature* of the parties' obligations to the creditor was different (repurchase agreement as opposed to providing collateral by deeds of trust), they were not equally obligated on the debt. In other words, they were all sureties for the principal, but not "co-sureties" within the meaning of the law. Thus, Allentown was not limited to claims in contribution. Id. at 335, 317 S.E.2d at 676.[5]

In the present case Forrest's obligation on the original personal guaranty was in the nature of an unconditional surety. [Plaintiff's Exhibt 4 at 1]. On the other hand, Spicewood's obligation was in the nature of a conditional guaranty limited to the value of property pledged. [Plaintiff's Exhibit 3]. Since the power of sale in Spicewood's deed of trust was conditioned on there having been a default by the principal, N.C. Gen. Stat. §45-21.16, Spicewood's obligation was in the nature of a pledge of property to satisfy the debt only in the event

[5] The Court notes that the Supreme Court in Hofler left open the issue of whether the Hill and Suttles, being unequal sureties with Allentown, would then be entitled to seek full reimbursement *from Allentown*. Such would, of course, be an absurd result, but it is one that flows from the Supreme Court's reasoning and conclusion. For this reason, if given the opportunity to reexamine its holding in Hofler, the Supreme Court may wish to adopt instead the Restatement of Suretyship position, which would limit any recovery between any sureties of the same principal to contribution. This Court, however, is in no position to substitute its judgment for that of the Supreme Court of North Carolina on issues of North Carolina law, and thus is bound to apply Hofler as decided by that Court.

of default. Therefore, under Hofler, Forrest and Spciewood have obligations of a different nature, and thus Forrest is not limited to recovering contribution.

Spicewood argues that there is another manner in which the surety obligations differ, namely that Spicewood was never obligated on Villas' debt, but rather only pledged collateral to stand for that debt. Based thereon Spicewood argues that Forrest is entitled to neither contribution (because they are not co-sureties) *nor* reimbursement. Spicewood cites BB&T v. Creasy, 301 N.C. 44, 269 S.E.2d 117 (1980); New Amsterdam Cas. Co. v. Waller, 233 N.C. 536, 64 S.E.2d (1951); and Dry v. Parker, 205 N.C. 571, 172 S.E. 351 (1934); in support of this proposition. [Doc. 6 at 14]. These cases, however, do not support such a conclusion in any way. None of these cases address issues of the obligations of two sureties to one another, or even involve situations of a surety who only provided collateral without being a signatory to the underlying debt instrument. Spicewood apparently cites these cases for their boilerplate statements regarding the distinction between sureties (whose liability is primary) and guarantors (whose liability is conditional or secondary). It is not disputed, however, that Forrest's obligation to the Bank was primary, while Spicewood's obligation was secondary. The crucial distinction under Hofler is whether their respective obligations are different in nature. In Hofler the obligations were held to be different even though both

were secondary - Hill and Suttles on a deed of trust (like Spicewood herein) and Allentown on a repurchase agreement. Once found to be different, the co-surety rule limiting the recovery between sureties to contribution is inapplicable. Spicewood, however, is unable to cite this Court to any authority for the proposition that reimbursement is unavailable.

The same result is reached by applying the doctrine of equitable subrogation.

> [Equitable subrogation] is a legal fiction, by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, who is thus substituted to the rights, remedies and securities of another.

Peek v. Wachovia Bank & Trust Co., 242 N.C. 1, 15, 86 S.E.2d 745, 755 (1955). Therefore, a surety who pays a debt of his principal succeeds "to all of the rights of the creditor in the premises, as to collaterals." Peebles, 115, N.C. at 40, 20 S.E. at 174 (1894); see also Liles, 113 N.C.197, 18 S.E. 104 (1893).

Forrest paid Villas' debt, albeit in two components - the loss of the CD and the purchase of the Note. As such, Forrest accedes to all rights and remedies the Bank would have had on the debt. This includes foreclosure upon Spicewood's deed of trust to satisfy the debt. Spicewood points to no authority that would exclude such application of equitable subrogation from

the claim regarding the loss of the CD. Since Forrest has an adequate remedy at law on the instrument, however, there is no need to resort to the application of equitable principles to resolve this matter.

Appellant also raises issue regarding whether Spicewood has waived its objection to the claim and whether the doctrine of unjust enrichment serves as a basis for overruling Spicewood's objection. In light of the determination set out herein, the Court need not reach those issues.

For these reasons, the Bankruptcy Court was in error in holding that Forrest cannot recover reimbursement for the loss related to the CD on Spicewood's deed of trust. Therefore, the Order of the Bankruptcy Court sustaining that portion of Forrest's claim must be reversed.

Since the amounts of the components of Forrest's claim were not contested either below or before this Court, it can be determined that as a result of this reversal of the Bankruptcy Court's order that Forrest has an allowable claim in the Debtor's bankruptcy in the amount of $315,947.18, consisting of the $101,561.15 allowed by the Bankruptcy Court which was not appealed plus the $214,386.03 at issue for the loss related to the CD. Since the Bankruptcy Court was not called upon to make a determination regarding the value of the collateral, on remand such will need to be decided in order to

determine whether Forrest's claim is fully secured as she asserted in her Proof of Claim.

**IT IS, THEREFORE, ORDERED** that the Order of the Bankruptcy Court sustaining, in part, the Debtor's objection to the claim of Forrest [Doc. 87] is **REVERSED**, and this matter is remanded to the Bankruptcy Court for further proceedings not inconsistent with this Order.

This Corrected Order is entered *nunc pro tunc* to February 4, 2011, to correct an error in citation in the original Order.

Signed: April 6, 2011

Martin Reidinger
United States District Judge